UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| MICHAEL DEAN VAUGHAN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3: 10-05-DCR |
| | ) |
| V. | ) |
| | ) |
| MARY ELIZABETH BRIGHAM, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of sanctions against the *pro se* plaintiff, Michael Dean Vaughan. Vaughan has proved that he intends to use the federal court system for harassment, retaliation, and to improperly influence his pending military-discipline hearing. But more importantly, Vaughan has committed perjury. For these reasons, the Court believes that the only appropriate sanction is to dismiss Vaughan's case.

**I.**

This case is unusual in both its factual underpinnings and procedural posture. Vaughan initially filed this action in February 2010. [Record No. 2] At its core, the case arises from the broken personal relationship between Vaughan and Defendant Mary Brigham. Shortly after the two ended their relationship, Brigham discovered that pornographic images of her had been forwarded by anonymous e-mail to her friends and family. Brigham believed that Vaughan had distributed the images. As a result, Brigham contacted the Kentucky National Guard, Vaughan's

employer, and informed them of her beliefs. The Guard initiated an investigation and eventually brought charges against Vaughan for engaging in conduct unbecoming an officer. In response, Vaughan brought this suit against Brigham, alleging defamation, false light, and intentional infliction of emotional distress. [*Id.*] Additionally, in August 2010, Vaughan sued Colonel Robert Hayes, of the Kentucky National Guard, alleging similar claims of defamation, false light, and intentional infliction of emotional distress. *See Vaughan v. Hayes*, No. 3:10-054-DCR (E.D. Ky., Aug. 16, 2010).

Brigham never filed an answer to Vaughan's complaint. As a result, the Clerk initially entered default against Brigham. [Record No. 15] Had Vaughan simply moved for default judgment, and nothing more, this case would likely have concluded in quick fashion. However — revealing his true motives in filing this case — Vaughan did not immediately move for default judgment. Instead, he sought to take discovery of the Kentucky National Guard. It is his conduct in pursuing that discovery that has led the Court to consider sanctions.

Vaughan's conduct illuminates his intent in pursuing this case: to harass the defendant and the Kentucky National Guard and to impede the pending Guard disciplinary proceeding. On March 26, 2010, Vaughan was granted leave to conduct discovery of certain members of the Kentucky National Guard. [Record No. 14] He served subpoenas upon two officers, but he failed to comply with Army regulations for serving subpoenas in private litigation. [*See* Record No. 34] When the Guard informed Vaughan of his request's procedural deficiencies, rather than moving the Court to compel production, Vaughan twice moved the Court to hold the officers in contempt. [Record Nos. 26, 30] His requests were summarily denied. [Record Nos. 28, 34]

After Vaughan complied with the procedural requirements, the Guard moved to quash the subpoenas. [Record No. 35] In response, Vaughan moved for sanctions against the Guard's attorney, Lieutenant Colonel Dylan Seitz. [Record No. 43][1] At a hearing held on September 28, 2010, the Court heard testimony, granted the Guard's motion to quash, and denied Vaughan's motion for sanctions. [Record No. 45]

During the September 28, 2010 hearing, Vaughan provided testimony that so strained credulity it eventually led the Court to conduct further inquiry into whether he committed perjury. [Record Nos. 47, 64] Also as a result of evidence presented at the hearing, the Court held the case in abeyance for six months to allow criminal authorities to investigate accusations of Vaughan's harassment and threatening communications. [Record No. 45] Additionally, based on Vaughan's conduct, the Court found good cause to deny Vaughan's motion for entry of default judgment. [Record No. 47, p. 50] *See* Fed. R. Civ. P. 55(b)(2).

After the six-month stay, Vaughan immediately renewed his motions for default judgment (which had previously been denied) and sanctions against LTC Seitz (also previously denied). [Record Nos. 52, 59] Vaughan's motion for default judgment was again denied [Record No. 63] and the Court scheduled a second hearing to address Vaughan's motion for sanctions and motion for a preliminary injunction. [Record Nos. 61, 62] At the second hearing, on June 28, 2011, the United States Attorney entered an appearance on behalf of the Guard. [Record No. 71] However, Vaughan moved to disqualify the United States Attorney, claiming that his authority

---

1 The basic premise of Vaughan's motion was that LTC Seitz referred to an "open" criminal investigation against Vaughan in Washington, which Vaughan believed to then be closed. However, at the hearing on the matter, Vaughan admitted that the investigation (as of the hearing) was, in fact, open. [Record No. 47, p. 12 ("It's open as of right now.")]

-3-

did not allow him to represent the Guard — which Vaughan claimed was a state agency. [Record No. 69; *see also* Record No. 34, pp. 3–4 (concluding that "[a]lthough the Kentucky National Guard may be a state agency falling under the Kentucky Department of Military Affairs, it is nevertheless also a component of the United States Armed Forces and subject to regulations promulgated by the Department of Defense")] The Court denied Vaughan's motion.

This long, drawn-out discovery dispute with the Kentucky National Guard exemplifies Vaughan's conduct. In total, rather than simply moving for default judgment, Vaughan has filed motions for discovery, three "emergency" motions, two motions for contempt, two motions for sanctions, and a motion to disqualify a United States Attorney from representing members of the United States Army.[2] Vaughan has proved that his intent is not to settle his dispute with Brigham, but to attack and harass those involved, particularly the third-party Kentucky National Guard. The federal courts are not a forum for pursuing such motives, and the Court finds that several of Vaughan's motions were filed in bad faith.

In the process, Vaughan has committed perjury. As previously mentioned, Vaughan's testimony at the September 28, 2010 hearing was, at best, difficult to believe. Particularly, Vaughan alleged that a sworn statement that he gave during the course of the Guard's disciplinary investigation was "coached" and "coerced." [Record No. 47, p. 26] He claimed that he was forced into making a false statement by a Major in the Kentucky National Guard. [*Id.*]

---

2    Continuing with this pattern, on June 30, 2011, Vaughan filed a set of "Objections" [Record No. 75], in which he essentially objected to all of the Court's rulings to date and asked for a rehearing of all contested motions. Vaughan's motion refers to the "blatant bias, incredible prejudice, and intimidation tactics of the Honorable Judge Reeves" and described the undersigned as being willing "to sacrifice the integrity of the court to attack" Vaughan. [*Id.*, pp. 1,4] In other words, Vaughan has now turned his obstreperous conduct and pattern of harassment toward the Court itself.

Vaughan also claimed that the sworn statement was inaccurate because it was procured while he was under the influence of narcotics. [*Id.*, p. 15] However, despite his allegedly being so high as to render him unable to tell the truth, Vaughan's statement contained remarkably accurate detail of the events leading up to this dispute. In fact, Vaughan later testified that every single fact provided in the statement was accurate, except the single paragraph that was damning to his present claims. [*Id.*, p. 26] Before receiving his testimony, the Court put Vaughan on notice that if he provided false testimony, it could have grave consequences for him and his case. [*Id.*, p. 16 ("And you do understand that because you're making these statements to me in open court . . . that if the Court finds those statements to be false that you could be subject to some serious penalties?")]

Prior to the June 28, 2011 hearing, the Court put Vaughan on notice, for the second time, that if his statements were found to be incorrect, he would face sanctions. [Record No. 64, p. 2] At the June 28, 2011 hearing, the Court received additional testimony concerning Vaughan's statements. Major Richmond testified. His credible testimony clearly established that Vaughan was not impaired while providing his previous sworn statement. Further, Major Richmond established that, contrary to Vaughan's assertions, he in no way ordered, coached, or coerced Vaughan into providing the statement. At the conclusion of the hearing, the Court concluded that Vaughan had committed perjury.[3]

---

3  The Court recognizes that not all inaccurate testimony is perjury. On many occasions, statements that are incorrect may result from confusion, mistake, or faulty memory. Therefore, not all inaccurate testimony or statements reflect a willful attempt to obstruct justice. However, that is not the case here. In the present matter, the Court finds that Vaughan intentionally lied to the Court about a matter that is central to his claims. His false testimony was not the result of confusion or mistake; rather, it was willfully deceptive and a plain attempt to obstruct justice.

## II.

Courts have the power to monitor, control, and discipline the conduct of parties and attorneys in litigation. This authority is derived from a number of sources such as statutes (*e.g.*, 28 U.S.C. § 1927) and procedural rules (*e.g.*, Rules 11, 37(b), and 41(b) of the Federal Rules of Civil Procedure). These rules are, in general, "tailored to certain categories of participants or aspects of litigation, and are subject to procedural and substantive limitations peculiar to each." *Derzack v. Allegheny*, 173 F.R.D. 400, 412 (W.D. Pa. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). For example, Rule 37(b) applies exclusively to conduct in discovery. *See* Fed. R. Civ. P. 37(b). And § 1927 applies exclusively to attorneys, not *pro se* litigants or parties. *Davenport v. Roach Oil Co.*, No. 09-11793, 2011 U.S. Dist. LEXIS 13802, at *23 n.8 ( E.D. Mich. Feb. 11, 2011) ("[B]y its very terms, [§ 1927] only allows courts to impose penalties upon 'any attorney or other person admitted to conduct cases . . . .' Thus, § 1927 has no applicability here to the imposition of sanctions against a *pro se* litigant."). Likewise, because Vaughan is appearing *pro se*, he cannot, technically, commit fraud on the court. *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993) (explaining that, in order for conduct to be fraud on the court, it must have been "on the part of an officer of the court"); *Florence v. Donald*, No. 306-087, 2008 U.S. Dist. LEXIS 31259, at *4 (S.D. Ga. Apr. 16, 2008) ("Because Plaintiff is a *pro se* litigant rather than a member of the bar, his actions cannot properly be described as 'fraud on the court.'").

In some cases, such as Vaughan's, conduct falls between the cracks of this regulatory scheme. The offending party's conduct does not fall within the scope of any single provision.

However, in such cases, the Court is not left without the ability to regulate behavior before it. "Neither statute nor the Federal Rules of Civil Procedure supplant . . . the implicit, inherent power of the court . . . to restrain excesses of the participants and to preserve the integrity of the judicial process." *Derzack*, 173 F.R.D. at 411. As the Supreme Court has explained, it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others.'" *Chambers*, 501 U.S. at 43 (quoting *United States v. Hudson*, 11 U.S. 32 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). The inherent power of the court "extends to a full range of litigation abuses," *id.*, and "can be called upon to fill-in the interstices between particular rules of conduct." *Derzack*, 173 F.R.D. at 412. In this case, the Court relies on its inherent powers to appropriately sanction Vaughan's conduct.

The Sixth Circuit "has long recognized that a trial court's inherent power includes the power to dismiss cases." *Wolfe v. GC Servs. Ltd.*, No. 08-10628, 2008 U.S. Dist. LEXIS 119489, at *16–17 (E.D. Mich. Dec. 5, 2008) (citing *Reid v. Prentice-Hall, Inc.*, 261 F.2d 700, 701 (6th Cir. 1958); *Mitan v. Fidelity Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001)); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1995) (holding that a district court "may dismiss a suit outright in response to litigation abuses."). Further, the Court understands that dismissal is an "extreme sanction," *Derzack*, 173 F.R.D. at 412, that

-7-

should only be utilized when "a lesser sanction would not better serve the interests of justice." *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 233 (6th Cir. 1983). However, in this case, the severity of Vaughan's contumacious conduct compels such a sanction.

Two different facets of Vaughan's behavior underpin this conclusion. First, he lied. Numerous cases support the Court's authority to dismiss a case for perjury or fabricating evidence. *See, e.g.*, *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th Cir. 1991) (dismissing case because plaintiff lied during deposition testimony); *Wyle v. R.J. Reynolds Ind., Inc.*, 709 F.2d 585 (9th Cir. 1983) ("[C]ourts have an inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."); *Rybner v. Cannon Design, Inc.*, No. 95-0279, 1996 U.S. Dist. LEXIS 12068 (S.D.N.Y. Aug. 20, 1996) (citing numerous "fabrication of evidence" cases and dismissing case as sanction for submitting false documents and providing false testimony during deposition); *Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995) (dismissing case, under inherent powers, for fabricating evidence, perjury, and obstruction of discovery process). Second, Vaughan's pattern of behavior indicates that his suit was brought for an improper purpose and in bad faith. Vaughan has shown a desire not to resolve his suit but to attack the Kentucky National Guard and impede its pending disciplinary processes. Vaughan has shown a pattern of bad faith and harassment that leaves the Court no other option than to dismiss his case.

The Court's conclusion is further bolstered by considering the four factors used to determine whether dismissal is an appropriate sanction:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the

dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).[4] In this case, each of the four factors supports dismissal.

First, Vaughan's conduct is unquestionably due to willful actions and bad faith. The Court does recognize that Vaughan is proceeding *pro se*. While *pro se* litigants are held to less stringent standards in the construction of their pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "*pro se* status does not exempt [litigants] from compliance" with applicable rules. *Sharwell v. Baumgart*, No. 97-33320, 1997 U.S. App. LEXIS 30278, at *5 (6th Cir. Oct. 30, 1997). In this case, Vaughan's conduct is not the result of inartful pleading or any lack of legal training; in fact, he has shown himself to be quite knowledgeable of applicable statutes and rules of procedure. *Cf. Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Rather, Vaughan's conduct is the result of a bad-faith attempt to harass other parties through the mechanism of the federal courts and a purposeful attempt to deceive the Court. Vaughan's contumacious conduct was willful and is not excused by his *pro se* status.

Second, while the defendant, Brigham, was not necessarily prejudiced by Vaughan's conduct, the same conclusion cannot be reached with respect to the third-party, the Kentucky National Guard. First, the Guard expended significant resources to address both Vaughan's attempts to use this case to collect discovery from the Guard and his repeated motions for

---

4   *Reyes* set out these four factors to guide courts in deciding whether dismissal is proper under Rule 41(b) or 37(b), but the Sixth Circuit has explained that the factors evaluated when considering dismissal, either under Rule 41(b), Rule 37(b), or a court's inherent powers, "are largely the same." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

contempt and sanctions. The Guard has been dragged into court on multiple occasions to respond to a suit to which it is not a party. Thus, while Vaughan's conduct has not necessarily prejudiced Brigham, it has prejudiced other parties in a significant way.

Third, Vaughan was warned that perjury would have serious consequences. The Court verbally warned Vaughan before he provided any testimony in this case that false testimony would carry "serious penalties." [Record No. 47, p. 16] Further, the Court provided Vaughan written notice, before the second hearing, that if he were found to have committed perjury, he would be subject to sanctions. [Record No. 64] Vaughan, therefore, was adequately warned that his continued reliance on his false statements and representations would have consequences.

Finally, considering Vaughan's conduct throughout this proceeding, the Court is convinced that no other sanction would appropriately deter the kind of conduct Vaughan has exhibited in this case. *See Eppes v. H.E. Snowden*, 656 F. Supp. 1267 (E.D. Ky. 1986) ("The remedy must serve as a deterrent to the defendant and all other that might be similarly tempted to [provide false testimony] . . . [and] must be sufficient to serve universal notice that this conduct will not be tolerated."). The Court has considered other sanctions, but finds that nothing short of dismissal would sufficiently make clear to Vaughan that his conduct will not be tolerated. [*See* June 28, 2011 Tr. ("I find that this defendant has presented false and perjured testimony to me, he doesn't seem to understand the significance of that, he doesn't seem to understand that he's lost on several motions that he's filed, that he keeps coming back with the same arguments that are unsuccessful. In short, I don't know that there's any other sanction that

would be appropriate other than dismissal of this case.")[5]] Perjury will not be tolerated. And using the federal court as a means for retaliation, harassment, and the fulfillment of personal vendettas will likewise not be tolerated. Vaughan has acted in bad faith and he has abused the litigation process. Under the circumstances, the only appropriate remedy is outright dismissal of his action.

## III.

Dismissals of actions that do not reach the merits of a claim are not "ordinarily a bar to a subsequent action on the same claim." *Costello v. United States*, 365 U.S. 265, 285 (1961). In other words, dismissals which do reach the merits are generally made without prejudice. "Nevertheless, 'in rare circumstances, a district court may use its inherent powers to dismiss with prejudice (as a sanction for misconduct) . . . .'" *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) (citing *Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1091 (D.C. Cir. 1998)). This case is one of those "rare circumstances." *Id.* The Court's sanction — dismissal — would have no practical effect unless the case is dismissed with prejudice. Therefore, to effectuate its sanction, the Court believes it is necessary to dismiss Vaughan's case with prejudice.

---

5     The official transcript of the June 28, 2011 hearing has not yet been published.

**IV.**

Vaughan has acted in bad faith and has committed perjury. The Court, through its inherent powers, will dismiss this action as a sanction for his contumacious conduct. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Michael Vaughan's action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's active docket.

2. Plaintiff's pending motions [Record Nos. 74, 75] are **DENIED** as moot.

This 5th day of July, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge